

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

Arlene Joyce Furfero,

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

St. John's University, Conrado "Bobby" Gempesaw, Simon Moller, Norean Sharpe, Charles Clark, Joseph Oliva, Joshua Hurwit, Nada Llewellyn, Keaton Wong, Michelle Cadle, and Danielle Haynes,

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:   X Yes   ☐ No
*(check one)*





## I.  The Parties to This Complaint

### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Arlene Joyce Furfero |
| Street Address | 1373 Weaver Street |
| City and County | Scarsdale, Westchester |
| State and Zip Code | New York 10583 |
| Telephone Number | 914-725-3657 |
| E-mail Address | drfurfero@drfurfero.com |

### B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | St. John's University |
| Job or Title | Employer |
| Street Address | 8000 Utopia Parkway |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-2000 |
| E-mail Address | |

Defendant No. 2

| | |
|---|---|
| Name | Conrado "Bobby" Gempesaw |
| Job or Title | President |
| Street Address | 8000 Utopia Parkway – Newman Hall 3rd fl |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-6755 |
| E-mail Address | pres@stjohns.edu |

See attached for I.B. Defendants (cont'd).

2

**III.    Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☐    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

X    Unequal terms and conditions of my employment.

X    Retaliation.

X    Other acts *(specify)*:   Denied summer session courses and
compensation; unwarranted disciplinary charges and suspension

*(Note:  Only those grounds raised in the charge filed with the Equal
Employment Opportunity Commission can be considered by the federal
district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

Various dates. See attached for III.E. Statement of the Facts in my Case

C.    I believe that defendant(s) *(check one)*:

X    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐    race _____

☐    color_____

4

| X | gender/sex _____ |
|---|---|
| ☐ | religion _____ |
| ☐ | national origin _____ |
| X | age.  My year of birth is 1946.  *(Give your year of birth only if you are asserting a claim of age discrimination.)* |
| ☐ | disability or perceived disability *(specify disability)* _____ |

E.   The facts of my case are as follows.  Attach additional pages if needed.

See attached for III.E. Statement of the Facts in my Case.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

September 12, 2019.

B.   The Equal Employment Opportunity Commission *(check one)*:

| ☐ | has not issued a Notice of Right to Sue letter. |
|---|---|
| X | issued a Notice of Right to Sue letter, which I received on *(date)* March 4, 2020. |

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

| X | 60 days or more have elapsed. |
|---|---|
| ☐ | less than 60 days have elapsed. |

## V.      Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached for V. Relief.

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: May  _13_, 2020.

Signature of Plaintiff        _A. Joyce Furfero_

Printed Name of Plaintiff    Arlene Joyce Furfero

6

I.B. Defendants (cont'd)

Defendant No. 3

| | |
|---|---|
| Name | Simon Moller |
| Job or Title | Provost |
| Street Address | 8000 Utopia Parkway – Newman Hall Room 240 |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-6308 |
| E-mail Address | mollers@stjohns.edu |

Defendant No. 4

| | |
|---|---|
| Name | Norean Sharpe |
| Job or Title | Dean, Tobin College of Business |
| Street Address | 8000 Utopia Parkway – Bent Hall Room 311 |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-6476 |
| E-mail Address | sharpen@stjohns.edu |

Defendant No. 5

| | |
|---|---|
| Name | Charles Clark |
| Job or Title | Chair, Economics and Finance Department |
| Street Address | 8000 Utopia Parkway – Bent Hall Room 330 |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-7343 |
| E-mail Address | clarkc@stjohns.edu |

Defendant No. 6

| | |
|---|---|
| Name | Joseph Oliva |
| Job or Title | VP for Admin, Secretary, and General Counsel |
| Street Address | 8000 Utopia Parkway – Newman Hall Room 218 |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-6421 |
| E-mail Address | olivaj@stjohns.edu |

Defendant No. 7

| | |
|---|---|
| Name | Joshua Hurwit |
| Job or Title | Associate General Counsel |
| Street Address | 8000 Utopia Parkway – Newman Hall Room 217A |

| | |
|---|---|
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-5699 |
| E-mail Address | hurwitj@stjohns.edu |

Defendant No. 8

| | |
|---|---|
| Name | Nada Llewellyn |
| Job or Title | Assoc. VP Human Resources, Chief Diversity Officer, and Deputy General Counsel |
| Street Address | 8000 Utopia Parkway = Newman Hall Room 214 |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-6334 |
| E-mail Address | llewelln@stjohns.edu |

Defendant No. 8

| | |
|---|---|
| Name | Keaton Wong |
| Job or Title | Director of Equal Opportunity and Compliance |
| Street Address | 8000 Utopia Parkway – University Center |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-2660 |
| E-mail Address | wongk1@stjohns.edu |

Defendant No. 9

| | |
|---|---|
| Name | Michelle Cadle |
| Job or Title | EEO Specialist |
| Street Address | 8000 Utopia Parkway – University Center |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-1400 |
| E-mail Address | cadlem@stjohns.edu |

Defendant No. 10

| | |
|---|---|
| Name | Danielle Haynes |
| Job or Title | Assoc. Dir. Employee Relations |
| Street Address | 8000 Utopia Parkway– University Center C12 |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-1488 |
| E-mail Address | haynesd1@stjohns.edu |

8

**C.**   **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | St. John's University |
| Street Address | 8000 Utopia Parkway |
| City and County | Jamaica, Queens |
| State and Zip Code | New York 11439 |
| Telephone Number | 718-990-2000 |

**II.**   **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

X      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

X      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐      Other federal law *(specify the federal law)*:

X      Relevant state law *(specify, if known)*: NYS Executive Law § 296

X      Relevant city or county law *(specify, if known)*: Title 8 of the Administrative Code of the City of New York

III.E. Statement of the Facts in my Case

## **Background**

I am a 73-year old female. I earned my doctoral degree in economics from Rutgers University in 1980. I was hired by Defendant St. John's University to commence employment on September 1, 1980, as an Assistant Professor in the Economics and Finance Department in the the the College of Business Administration (now, the Peter J. Tobin College of Business). I was successfully tenured and promoted to Associate Professor in 1985.

I have successfully completed all mandatory classroom observations (for reappointment, promotion, tenure, and Post Tenure Peer Review). My last review occurred in academic year (AY) 2014-2015. I received an Outstanding for my performance and was awarded the maximum monetary award of $2,000. My next review is scheduled for AY 2021-2022.

Commencing July 1, 2019, the University appointed Dr. Charles Clark as the new Chair for the Economics and Finance Department. Since Dr. Clark's appointment, he has done nothing but harass, embarrass, and intimidate me. I have suffered several adverse employment actions which I believe are a direct result of my being an older female professor and as retaliation for filing an age and gender discrimination complaint against him with Human Resources.

Discrimination is not beneath Dr. Clark. He was at the center of an age discrimination controversy back in the mid-2000s, when he served as Associate Dean under former Dean Richard Highfield. Dr. Highfield's goal, as stated in his Strategic Plan, was to hire, reward, and promote "junior journeyman faculty members." Dr. Clark created a "productivity point system" to calculate the alleged scholarly productivity of the faculty members in the business school. The points were then used to allocate research resources (grants and graduate assistants), reduced teaching time for research, and sabbaticals. However, the points were intentionally weighted more heavily toward activities of junior faculty members (who tend to be younger) and dismissed, ignored, or overlooked legitimate scholarly activities of senior faculty members (who are older). Dean Highfield used the "productivity point system" to justify the disparate treatment and, in doing so, forced older professors into voluntarily retiring so that the University did not have to buy them out.

The University has had a difficult time getting older professors to retire voluntarily, without having to offer them buyouts. Its last buyout was in 2014, and Dr. Gempesaw, who was hired in 2015, refuses to offer any. I believe that he encouraged the appointment of Dr. Clark as Chair of the Economics and Finance Department with the malevolent intent of harassing, embarrassing, and intimidating older professors to retire voluntarily without the need to offer buyouts. With the support and cooperation of Dr. Norean Sharpe, the Tobin College Dean, Dr. Clark embarked on a plan to systematically harass, embarrass, and intimidate older professors into voluntarily retiring without the need for a buyout.

## **Material Adverse Employment Actions**

1)      First discriminatory Article 10.01 action. On October 30, 2018, Dr. Clark sent me an Article 10.01 disciplinary letter to come to a meeting in his office to discuss a complaint from two students, who said that I berated and threatened them over the use of a Team Room. Without ever getting my side of the story, he inflated the complaint to allege that I engaged in "conduct inconsistent with accepted professional and moral standards." I met with Dr. Clark on November 9, 2018. Dr. Joseph Marotta, President of the Faculty Association (FA), attended the meeting. Article 10.01 is reserved for "academic issues." The students' complaint had nothing to do with an academic issue and nothing I did was unprofessional or immoral. On December 10, 2018, I met with Dean Sharpe and Dr. Marotta. Dean Sharpe conceded that I had not threatened the students, but rather that the students felt threatened (and I certainly had not engaged in "conduct inconsistent with accepted professional and moral standards"). At that point, the matter should have been dismissed, but it was not. To resolve the matter, I agreed to apologize, if the documents generated during this bogus Article 10.01 action were destroyed. The University refused.

On December 17, 2018, Associate General Counsel, Joshua Hurwit, Esq., emailed me, saying, the documents would not be destroyed. Instead, he suggested and crafted a memo to be placed in my file to which I could respond. The memo said that I "raised my voice." I refused to entertain it. Even assuming that I had raised my voice, which I do not concede, raising one's voice is not "conduct inconsistent with accepted professional and moral standards." Rather the characterization is gender bias. When a man raises his voice, he is considered to be authoritarian, assertive, showing leadership. When a woman raises her voice, she is considered to be engaged in "conduct inconsistent with professional and moral standards." The memo was discriminatory.

On December 18, 2018, I appealed the actions of Dr. Clark, Dr. Sharpe, and Mr. Hurwit to the Interim Provost, Dr. Simon Moller. In his decision, dated January 9, 2019, Dr. Moller, discriminated against me when he failed and refused to simply dismiss the Article 10.01 based on a non-academic issue, and, instead, wrote that my appeal was premature, because I had not received a written action plan. However, a written action plan was completely unnecessary in my case, because I did nothing wrong. This matter is in limbo and requires immediate resolution. I believe that Drs. Clark, Sharpe, and Moller, and Mr. Hurwit harassed, embarrassed, and intimidated me with this Article 10.01 proceeding, because I am an older female professor.

2)      Second discriminatory Article 10.01 action. On April 16, 2019, Dr. Clark sent me another Article 10.01 disciplinary letter, this time to summon me to his office for a meeting to discuss what he called "low student evaluations and student complaints." Dr. Clark failed to identify any academic issue with regard to either student evaluations or student complaints. This time, I did not meet with Dr. Clark. Instead, I forwarded Dr. Clark's letter to both of our faculty union presidents – Dr. Frank Leveness (AAUP) and Dr. Joseph Marotta (FA) – with my comments expressing opposition to the meeting. A year has passed and I am still awaiting their reply. This matter is similarly in limbo and requires immediate resolution. I believe that Dr. Clark harassed, embarrassed, and intimidated me with this Article 10.01 action, because I am an older female professor.

Dr. Clark could have used other informal non-punitive procedures, but failed and refused to do so. Normally, a Department Chair will tell a student to take up an issue, first, with the professor.

Failing resolution with the professor, the Chair will call or email the professor informally, identify the issue or problem, and ask the professor for his/her side of the story. Expediency in resolving, especially, student complaints is of utmost importance. As Department Chair, Dr. Clark has a duty to resolve student complaints expeditiously. Instead, he warehoused them. Warehousing the complaints and, then, impetuousness commencing an Article 10.01 disciplinary action, without even asking for my side of the story to determine the merits of the incidents, show his true discriminatory animus. Since Article 10.01 was added to the University Statutes (circa 2010), I have never heard of a Department Chair using it for anything. I believe that Dr. Clark harassed, embarrassed, and intimidated me with this Article 10.01 action, because I am an older female professor.

3) <u>Disparate impact on older professors of alleged "neutral" policy</u>. On February 5, 2019, Dr. Clark sent emails to Dr. Young Back Choi and me, saying, the Dean had asked the Department Chairs to meet with professors who had "low student evaluations." I emailed Dean Sharpe and asked her if she had made the request and she said, "Yes." Through further emails, I learned that she had no objective metrics for which professors would be called into these meetings, but I know, only older professors, who were singled out for such disparate treatment. The professors whom I know were subject to this disparate treatment were Drs. Young Back Choi (late 60s), Anthony Pappas (72 years), Raja Vatti (83 years), Athanasios Vasilopoulos (82 years), and me. Presumably neutral policies that yield discriminatory results must be abandoned and prohibited. I believe that Dr. Clark and Dean Sharpe harassed, embarrassed, and intimidated Drs. Choi, Pappas, Vatti, Vasilopoulos, and me, because we are older professors.

4) <u>Discriminatory assignment of my preferred summer session class to a younger male professor</u>. On or about April 2, 2019, I noticed in the University's course offerings online that Dr. Clark had assigned Dr. Aleksandr Gevorkyan, a 43-year old male, to teach a summer session course that I requested. I asked Dr. Clark to revise the schedule and assign me to teach the course, pursuant to §§9.10 and 9.11 of the Collective Bargaining Agreement (CBA). He refused. Pursuant to §9.11, a class should be assigned to the more senior professor, when both professors have the qualifications to teach the course and the department has no special needs to deviate from seniority assignment. Dr. Clark violated this provision, because both Dr. Gevorkyan and I have the qualifications to teach the course and the department had no special needs to deviate from seniority assignment. Pursuant to §§9.10 and 9.11, all teaching assignments must be approved by the Department's Personnel and Budget (P&B) Committee. Dr. Clark violated this provision, because he never even notified the P&B Committee members that I had requested to teach the course. I notified the Committee members about the problem, and they requested a meeting with Dr. Clark to approve my assignment. Dr. Clark held two meetings, but nothing was accomplished, because Dr. Clark talked non-stop at the meetings and he refused to allow the P&B Committee members to vote. As a result, Dr. Gevorkyan taught the course and I lost $13,024 as summer session 2019 compensation (1/12th of my annual contract salary, pursuant to §14.06 of the CBA). Other job opportunities were not reasonably available to me. I believe that Dr. Clark treated me differently in the course assignment process and gave the summer session course to Dr. Gevorkyan, rather than me, because I am an older female professor. Since Dr. Clark's action was willful, I am entitled to double damages.

5)    <u>Discriminatory removal of graduate classes from my teaching schedule and assignment to younger male professor.</u> In mid-April, I noticed in the University's course offerings online that two sections of a graduate course, previously assigned to me and approved by the P&B Committee, were missing from my Fall 2019 teaching schedule. I asked Dr. Clark why the sections had been removed and he simply said that "issues have arisen." I asked him what issues, but he refused to say. I asked him to reinstate the sections. He refused. When I queried the P&B Committee members, I learned that Dr. Clark had removed the graduate courses without any consultation or approval from the P&B Committee.

On July 31, 2019, Dr. Clark emailed me, saying, he was giving my graduate classes to a male professor in his 60s (the younger male would have 3 sections of the same graduate course or one preparation for the semester) and he was giving me 3 undergraduate courses (3 different preparations). In his email, he acknowledged that he was making the younger male professor better off (Pareto optimal), while making me, the older female, worse off (Pareto suboptimal).

After 38 years of teaching combinations of graduate and undergraduate classes, Dr. Clark unilaterally, without P&B Committee approval, removed graduate courses from my teaching schedule, gave the graduate classes to a younger male professor, and assigned me only undergraduate courses. I believe that Dr. Clark treated me differently by unilaterally removing these two courses from my Fall 2019 teaching schedule, because I am an older female professor.

6)    <u>Discriminatory assignment of classes to younger professors.</u> At the start of the Fall 2019 semester (September) I learned that Dr. Clark did not change the above male professor's schedule and that he covered the courses that I had selected to teach with a combination of younger professors with lesser credentials: Dr. Juan Chebly (33 years), Dr. Chris O'Kane (38 years), Ms. Tracey L Freiberg (34 years), and Mr. Michael Flaherty (37 years). All but one of these hires plus other adjunct hires are male. Dr. O'Kane is not qualified to teach economics courses as he does not have a doctoral degree in economics. It is in philosophy. Ms. Freiberg and Mr. Flaherty have not yet completed their doctoral degrees. I believe that Dr. Clark treated me differently, because I am an older female professor.

7)    <u>Discriminatory removal and reassignment of classes to younger professors.</u> In addition, I learned from Dr. Ralph Terregrossa (65 years) that Dr. Clark took away his overload course for Spring 2020 and gave it to a 39-year old adjunct, Basel Mansour, who has not yet completed his doctoral degree. Upon information and belief, the P&B Committee did not approve this change. But for the fact that Dr. Terregrossa is an older professor, Dr. Clark would not have pulled the overload course from Dr. Terregrossa's teaching schedule and given it to a younger professor. This is another example of Dr. Clark's harassment, embarrassment, intimidation, and disparate treatment of older professors.

8)    <u>Retaliation and more Age and Gender Discrimination from bogus allegations of statements related to race discrimination.</u>

On April 30, 2019, I filed an age and gender discrimination complaint against Dr. Clark with Human Resources. My case was assigned to Danielle Haynes, Associate Director Employee Relations.

On May 2, 2019, I met with Ms. Haynes. I mentioned that the discrimination may be more systemic and involve Dean Sharpe, Mr. Hurwit, and other administrators, going up the line to the President. I subsequently forwarded additional evidence of discrimination to her.

On May 15, 2019, Michelle Cadle, an EEO Specialist, sent me an email asking me to meet to discuss allegations of statements related to race discrimination. I contacted Dr. Marotta, again, and we agreed to meet with Ms. Cadle on June 11, 2019.

On June 4, 2019, Ms. Cadle sent me a second email, saying, "At our meeting on June 11, 2019, we are also going to discuss the attached, which was brought to our attention recently." The attachment was a 25-page anonymously typed unsigned, unsworn, unauthenticated, unverified, uncertified transcript of an interview that I allegedly gave to a former graduate student, more than six (6) years prior, on March 28, 2013, as partial fulfillment for his grade in a graduate course he was taking with Dr. Kirsten Szylvian in the Master of Public History program.

On June 11, 2019, Dr. Marotta and I met with Ms. Cadle. Mr. Hurwit also attended the meeting. I subsequently learned in January 2020 that Mr. Hurwit recorded the meeting without telling us.

First, Ms. Cadle posited three statements that I allegedly made to students in one of my Spring 2019 classes. The statements turned out to be innocuous. On July 10, 2019, Ms. Cadle sent me a closing letter, finding no evidence of discrimination in the alleged statements. Dr. Clark filed these allegations of race-related statements, and he did so to harass, embarrass, and intimidate me, because I am an older female professor, and as retaliation, because I filed an age and gender discrimination complaint against him.

Second, Ms. Cadle moved to address the transcript. Dr. Clark said that he "found" this transcript on a St. John's website, following a google search, and forwarded it to University Counsel, Joseph Oliva, Esq., and to the Director of Equal Opportunity and Compliance, Dr. Keaton Wong. I acknowledge giving an interview, that was recorded, but I was never given a copy of the recording to review, and I never knew of any transcription. I had never seen the transcript before June 4th, and it was unauthenticated. As a condition of giving the interview, I signed a Deed of Gift in which I turned over all of my rights in the interview to the University. In paragraph 2, the Deed said that the staff may edit the interview. Since I had never reviewed the recording or seen the transcript and was completely unaware of its existence up to that point, I did not know who made it or if anyone had edited it. I asked for authentication. Neither Ms. Cadle nor Mr. Hurwit could authenticate the transcript. I refused to discuss it, without authentication. The meeting ended.

On July 1, 2019, Ms. Haynes sent me a closing letter, saying, she failed to find any evidence of age and gender discrimination in my case. In light of all the evidence I submitted, Ms. Haynes' failure to find any evidence of age and gender discrimination is age and gender discrimination.

On July 2, 2019, Ms. Cadle sent me an email, saying, "we" found the audio file of the interview and the audio file confirms the transcript, "we" sent it along with 2 other documents to your

campus mailbox, and we would like to meet with you on July 15, 2019. She did not identify the documents,[1] and she had authenticated the audio file.

Professors are 10-month employees. By July, we are on summer break. I sent Ms. Cadle's email to Dr. Marotta, who emailed Ms. Cadle, saying, faculty are not obligated to come to meetings over the summer and that I would meet with her when I returned to campus in September.

Ms. Cadle never replied. Instead, she conducted her own "investigation" on an unauthenticated transcript, in my absence and without my input. On July 17, 2019, she sent me a closing letter, saying, she found enough evidence that I had made "offensive" (not discriminatory) statements "about" (not to) St. John's students in violation of an anti-bias, anti-discrimination policy (#704), which was adopted more than 5 years AFTER the date on the transcript. Her conclusion was completely inconsistent with the content of the University's own policy. She failed to support her conclusion with evidence of any alleged statements. I believe that Dr. Clark's allegations and Ms. Cadle's bogus investigation were age and gender discrimination, because I am an older female professor, and retaliation, because I filed an age and gender discrimination complaint against Dr. Clark and implicated senior administrators, whom Ms. Cadle may have been directed to protect.

Ms. Cadle forwarded my file to Dean Sharpe "for further handling." Dean Sharpe arbitrarily extracted what she identified as 4 sets of statements from the unauthenticated transcript, ascribed the statements to me, and, on July 30, 2019, while I was on summer break, she sent a letter to the President requesting that he bring an Article 10 disciplinary charge against me for alleged "conduct inconsistent with accepted professional and moral standards." I believe that the commencement of this Article 10 proceeding was age and gender discrimination by Dean Sharpe, because I am an older female professor, and retaliation by Dean Sharpe, because I filed an age and gender discrimination complaint against Dr. Clark and implicated her.

Pursuant to the University Statutes, the President should have met with me to attempt a resolution. He never did. Instead, on August 7, 2019, while I was still on summer break, President Gempesaw sent me a letter "relieving me of my teaching and service duties with pay pending a full investigation of the matter." The suspension was completely unwarranted. The charge has nothing to do with either my teaching or service duties. A professor is removed from the classroom only when s/he is a threat to others. At 5.0' I was not a threat to anyone and the President had no reason to believe that I was. I believe that this suspension by President Gempesaw was motivated by discrimination, because I am an older female professor, and he wanted me to voluntarily retire without a buyout, and by retaliation, because I filed an age and gender discrimination complaint against Dr. Clark and implicated him.

On August 8, 2019, while I was still on summer break, Joseph Oliva, Esq., acting as the President's designee, forwarded Dean Sharpe's Article 10 disciplinary charge to the Committee on Investigation and Advice of Charges Against a Faculty Member (the "Investigation Committee"). The Investigation Committee is composed of 5 duly elected faculty members and

---

[1] I learned in September when I returned to school and picked up my mail that one document was the executed Deed of Gift and the other was a picture of me.

is supposed to be an independent, impartial, completely neutral body. Its role is to investigate and resolve the charge(s). However, Mr. Oliva hamstrung the Investigation Committee, when he (President Gempesaw's designee) accepted assignment from the Board of Trustees to be the Committee's legal adviser. As an attorney, he knew or should have known that this appointment created a major conflict of interest for him. The Investigation Committee subsequently noted in its Final Report and Recommendations (the "Report") that he strategically withheld important information from the Committee as a result of this dual appointment. *See below.* Mr. Oliva now became complicit with the other administrators in their attempt to terminate me and thereby Mr. Oliva participated in their age and gender discrimination and retaliation of me.

On October 28, 2019, the Investigation Committee submitted its Report to the President. The President failed and refused to share it with me. It is now May 2020 and the President has failed and refused to share the Report with me. Upon learning from me in mid-December that the President refused to share the Report with me, the Investigation Committee sent me a copy on December 23, 2019. However, because of the holidays, I did not read it until January 19, 2020.

The Report completely vindicated and exonerated me! The Committee found three things: (1) the University failed to supervise Dr. Kirsten Szylvian and her colleagues, who created the St. John's Oral History Project, but failed to implement the "best practices" of the Oral History Association, and uploaded personal interviews to the internet without appropriate protections for interviewers and interviewees; (2) the University violated my academic freedom by filing bogus charges against my ability to speak freely about the University; and (3) no statements alleged from the transcript were improper. The Report noted how Mr. Oliva was unable to help with the Committee's investigation as the President's designee, because he was also assigned to be the Committee's legal adviser and so the Committee could not identify the "whistleblower" or determine his/her motives for filing the bogus race discrimination allegations against me. The Report recommended unconditionally and without qualification that the President withdraw the charges and lift the suspension immediately.

It is now May 2020, more than six (6) months later, and the President has failed and refused to act on the Committee's recommendations. Instead, the President is seeking a resolution that contains red herrings not even contemplated by the Committee. The President continues to discriminate against me, because I am an older female professor, and to retaliate against me because I filed an age and gender discrimination complaint against Dr. Clark and implicated him.

The President failed and refused to timely resolve the charges and lift the suspension from my teaching duties. The President's failure substantially changed the terms and conditions of my employment and caused me money harm. My principal duty is to teach. The President is preventing me from doing what I was hired to do and I am now out of the loop for course assignments for summer session and fall 2020. I will lose another summer session stipend, this time as a result of the suspension. My money damages will be a minimum of $13,024, plus any salary increases for AY 2019-2020 (1/12[th] of my annual contract salary, pursuant to §14.06 of the CBA). Other job opportunities will not be reasonably available to me. Dr. Gempesaw's refusal to resolve the charges and lift the suspension on a timely basis on reasonable terms so that I can teach is willful, so that I am entitled to double damages. Dr. Clark has also assigned away all of my preferred courses for Fall 2020, including the graduate courses.

The President failed and refused to timely resolve the charges and lift the suspension from my service duties. The President's failure substantially changed the terms and conditions of my employment. Approximately one third of faculty duties is to participate in governance – attend meetings, speak up, and vote. I have completely lost my ability to participate in faculty governance, because I have not been allowed to attend, participate in, or vote at Department or Faculty Council meetings. I was duly elected by the faculty as a representative to the University Senate and the Department's Personnel and Budget Committee. I am being denied the ability to exercise these elected appointments. I have not been allowed to attend those meetings, to speak up, or to vote. Dr. Gempesaw's refusal to resolve the charges and lift the suspension on a timely basis on reasonable terms so that I can serve is willful.

The suspension has brought humiliation, embarrassment, and shame. My colleagues want to know where I am. They have heard rumors that the University has brought me up on disciplinary charges. The immediate reaction is, What did I do? What did I do? Nothing, but the University has failed and refused to withdraw the charges, lift the suspension, and dispel rumors.

The University has unfairly and discriminatorily punished me for voluntarily helping a student to fulfill the requirements for one of his courses in a graduate program, and it has done nothing to punish Dr. Szylvian or her colleagues for their culpability with regard to the Oral History Project. Dr. Szylvian is about 58 years old.

President Gempesaw, et al., discriminated against me, because I am an older female professor and retaliated against me, because I filed an age and gender discrimination complaint against Dr. Clark and implicated him.

9)     I filed a complaint against Ms. Cadle for her failure to follow statutory and contractual procedures established in the CBA and the University's own policies. My complaint was, first, denied by Mr. Oliva, on behalf of Dr. Wong, who was on maternity leave (another conflict of interest for Mr. Oliva) and, on appeal, by Nada Llewellyn, Associate Vice President of Human Resources, on non-responsive grounds. They are simply covering up for their own ineptitude and discriminatory failure to sanction Ms. Cadle for her improper investigation and to stop this age and gender discrimination and retaliation of me from going further.

The discriminatory animus against me is systematic and pervasive. Several members of the Administration are complicit: Dr. Clark, Dr. Sharpe, Dr. Moller, and Dr. Gempesaw. Now, Mr. Oliva, Mr. Hurwit, and Ms. Llewellyn have unethically closed ranks to cover-up what we know now from the Investigation Committee was a deeply flawed investigation by Ms. Cadle, and, now, they are all covering up for Dr. Clark, Dean Sharpe, Dr. Moller, President Gempesaw, Dr. Wong, and Ms. Haynes! The Article 10 charge and my suspension are also retaliation against me for having filed an age and gender discrimination complaint against Dr. Clark and senior administrators, including the President. I have never heard of any faculty member being treated so harshly for no legitimate reason.

16

## V. Relief

1)      I want money damages of $13,024 to compensate me for the loss of my summer session 2019 course, because Dr. Clark assigned it to a younger male professor, plus double damages for Dr. Clark's willfulness for intentionally making the discriminatory course assignment.

2)      I want money damages of $13,024, plus any contractual salary increases for AY 2019-2020, to compensate me for the loss of my summer session 2020 course, because President Gempesaw failed and refused to timely withdraw the Article 10 charges and lift my suspension, plus double damages for President Gempesaw's willfulness for intentionally failing and refusing to timely withdraw the Article 10 charges and lift my suspension.

3)      I want an injunction against all of the Defendants – President Dr. Conrado "Bobby" Gempesaw, Provost Dr. Simon Moller, Dean Dr. Norean Sharpe, Department Chair Dr. Charles Clark, Joseph Oliva, Joshua Hurwit, Nada Llewellyn, Dr. Keaton Wong, Ms. Michelle Cadle, and Ms. Danielle Haynes – enjoining them from further engaging in discrimination and retaliation against me.

4)      I want injunction against all of the Defendants enjoining them from further acting individually and in consort with one another to discriminate against older professors and female professors.

5)      I want all of the Defendants to be directed to take sensitivity training for age and gender bias and discrimination.

6)      I want the frivolous Article 10 proceeding against me terminated immediately, with prejudice. I want the Article 10 charge to be withdrawn, the suspension to be lifted, my faculty position to be restored with all rights and privileges, President Gempesaw to send me a formal written apology for his failure to reinstate me back in November 2019 after the Investigation Committee recommended such in its Report to him, Dean Sharpe to send me a formal written apology for filing the baseless Article 10 charge against me, Mr. Oliva to send me a formal written apology for intentionally obstructing the Investigation Committee's investigation, and the University to be directed to destroy any and all documents generated during the Article 10 proceeding, except for the Committee Report.

7)      I want the frivolous allegations of racial discrimination by Dr. Clark and the phony investigation and erroneous conclusion by Ms. Cadle that underlies the Article 10 charge to be dismissed, terminated, and withdrawn with prejudice, Dr. Clark to send me a formal written apology for filing a frivolous claim, Ms. Cadle and Mr. Hurwit to send me formal written apologies for having engaged in unethical and improper employment practices in contravention of established University policies, Mr. Oliva and Ms. Llewellyn to send me formal written apologies for intentionally failing to discipline Ms. Cadle, and the University to be directed to destroy any and all documents generated during Ms. Cadle's frivolous investigation.

8)      I want the two Article 10.01 letters withdrawn, the allegations and complaints against me terminated with prejudice, Dr. Clark, Dean Sharp, and Mr. Hurwit to send me formal written

apologies for discriminating against me because of my age and gender, and the University to be directed to destroy any and all documents generated during these bogus Article 10.01 actions, including Mr. Hurwit's discriminatory memo.

9)      I want an injunction against Dr. Clark and Dean Sharpe enjoining them from issuing Article 10.01 disciplinary letters, unless the letter explicitly identifies "an academic issue concerning a faculty member's teaching, research and scholarship, or service responsibilities (as set for in Article 9 of the Collective Bargaining Agreement)."

10)     I want an injunction against Dr. Clark and Dean Sharpe enjoining them from using student evaluations as bases for Article 10.01 disciplinary actions, where the Collective Bargaining Agreement and the University Statues intend for them to be used solely for faculty development, not discipline.

11)     I want an injunction against Dr. Clark and Dean Sharpe enjoining them from using student complaints as bases for Article 10.01 disciplinary actions, unless the letter adequately identifies the "academic issue" in the student complaint.

12)     I want an injunction against Dean Sharpe enjoining her from issuing or allowing Department Chairs to issue Article 10.01 letters, unless she has previously published well-defined metrics of issues for which Article 10.01 disciplinary letters may be sent, and she must also publish a list of names of faculty members who are receiving Article 10.01 disciplinary letters based on the metrics and the metric for which the Article 10.01 letter is being sent, and she shall only draft written action plans that are narrowly tailored to correct specific identifiable academic issues.

13)     I want Dr. Clark to assign me to my requested course preferences, as per §§ 9.10 and 9.11 of the Collective Bargaining Agreement, and to restore graduate courses to my teaching schedules, now (for summer session and fall 2020) and in the future, as long as he is Department Chair.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2019-05306 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Dr. Arlene J Furfero | (914) 725-3657 | 1946 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1373 Weaver St, SCARSDALE, NY 10583 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| ST. JOHN'S UNIVERSITY | 501+ | (718) 990-6161 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8000 Utopia Pkwy, JAMAICA, NY 11439 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **04-30-2019**  Latest **04-30-2019**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

I have worked for the above-named entity since (1980) over 35-years and have recently been subjected to retaliation for having complained about age (72) and sex (gender female), in violation of the Age Discrimination in Employment Act (ADEA), as well as, Title VII of the Civil Rights Act of 1964, as amended (Title VII). On April 30, 2019, I complained internally about not receiving an assigned course (ECO 606) that was assigned to a younger male professor, Dr. Alex Gevorkyan (40s) who was assigned the summer course. After my complaint, I was disciplined with fabricated and baseless claims of racial discrimination. The claim stems from a 25-page interview that a student took of me six years ago for his class grade which was posted on St. Johns website. I was disciplined on August 7, 2019, by St. Johns President, Dr. Conrado Gempesaw and suspended from work with pay for not adhering to St. Johns values. Since my suspension 4 younger professors [T. Freiburg (34); J. Chebly (33); C. Kane (38) and M. Flaherty (37)] have replaced me. I believe that at least 6 older professors are being targeted for removal with fabricated claims of student complaints, excessive scrutiny of performance, disparate assignments and false misconduct allegation, in violation of Title VII, ADEA, State and Local Laws.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Arlene Furfero on 09-12-2019 04:53 PM EDT** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

, EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Dr. Arlene J. Furfero**
**1373 Weaver St**
**Scarsdale, NY 10583**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2019-05306** | **D. Young,** Investigator | **(929) 506-5309** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Judy A. Keenan*
Dcy

February 28, 2020

Enclosures(s)

**Judy A. Keenan,**
**Deputy Director**

*(Date Mailed)*

cc:  **Attn.: Mr. Joshua Hurwit**
**Associate General Counsel**
**St. John's University**
**8000 Utopia Parkway**
**Jamaica, NY 11439**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY  10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Dr. Arlene J. Furfero
1373 Weaver Street
Scarsdale, NY 10583

Re:    Arlene Furfero v. St. John's University
        EEOC #: 520-2019-05306

Dear Dr. Furfero,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission") has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

We have evaluated your charge based upon the information submitted and have determined that further investigation is unlikely to result in a determination that Respondent violated one of the Federal laws enforced by the Commission.  Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights.  If you want to pursue this matter further in Federal court, your lawsuit must be filed within 90 days of your receipt of the Notice included with this letter, otherwise your right to sue will be lost. This does not certify that Respondent is in compliance with the statutes.  The Commission's processing of this charge has been concluded.

Should you have questions, you may contact Investigator D. Young at (929) 506-5309.

Sincerely,

_____ Dey
Deputy Director New York District Office
Acting District Director

February 28, 2020
Date

Enc.

U.S. POSTAGE >> PITNEY BOWES

ZIP 10004 $ 000.50⁰
02 4W
0000360941 MAR 02 2020

FIRST CLASS

Rec'd
Mar. 4, 2020

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

Dr. Arlene J. Furfero
1373 Weaver Street
Scarsdale, NY 10583

1C5B3B7O35  C342

This envelope is made from post-consumer waste. Please recycle - again.

**UNITED STATES POSTAL SERVICE.**

**P**

**US POSTAGE PAID**

**PRIORITY MAIL 1-DAY ®**

**$7.75**

Origin:
05/14/2
357527

EXPECTED DELIVERY DAY: 05/15/20

0 Lb

C030

SHIP
TO:
225 CADMAN PLZ E
BROOKLYN NY 11201-1832

**USPS TRACKING® NUMBER**

5 5152 4986 0135 1819 01

P S0000 1000014

EP14F July 2013
OD: 12.5 x 9.5

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

**PRIORITY**
**★ MAIL ★**

**UNITED STATES POSTAL SERVICE®**
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

FROM:
Arlene Joyce Furfero
1373 Weaver St.
Scarsdale, NY
10583

TO:
ATTN: Pro Se Office
U.S. District Court EDNY
225 Cadman Plaza East
Brooklyn, N.Y. 11201

SMS

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

**UNITED STATES POSTAL SERVICE®**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse m
violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.