UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARLENE JOYCE FURFERO,<br><br>         Plaintiff,<br><br>    v.<br><br>ST. JOHN'S UNIVERSITY, CONRADO "BOBBY" GEMPESAW, SIMON MOLLER, NOREAN SHARPE, CHARLES CLARK, JOSEPH OLIVA, JOSHUA HURWIT, NADA LLEWELLYN, KEATON WONG, MICHELLE CADLE, AND DANIELLE HAYNES,<br><br>         Defendants. | Case No. 20-cv-02395-BMC-LB<br><br>*Electronically Filed*<br><br><br><u>**ORAL ARGUMENT REQUESTED**</u> |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Date: April 28, 2021
    New York, New York

## TABLE OF CONTENTS

**PAGE**

ARGUMENT ............................................................................................................................... 1

I.    STANDARD OF REVIEW ............................................................................................ 1

II.   DEFENDANTS HAVE NOT WAIVED THEIR RIGHT
TO SEEK DISMISSAL .................................................................................................. 2

III.  PLAINTIFF'S CLAIMS ARE CONCLUSORY AND
SHOULD BE DISMISSED ............................................................................................ 2

IV.  THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
SHOULD BE DISMISSED ............................................................................................ 6

V.   PLAINTIFF'S CLAIMS DO NOT RELATE BACK TO HER
EEOC CHARGE ............................................................................................................. 9

VI.  PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE LMRA .................................. 12

VII. PLAINTIFF'S CLAIMS ARE COVERED BY ARTICLE 78 ...................................... 14

CONCLUSION .......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................1

*Askin v. Dep't of Educ. of the City of N.Y.*,
   110 A.D.3d 621 (1st Dep't 2013) ............................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................1

*Boykin v. Nassau County Sheriff Dep't Family Court Unit*,
   14-CV-5581 (JS)(ARL), 2015 U.S. Dist. LEXIS 26582 (E.D.N.Y. Mar. 3, 2015) ......................................................................................................................................2

*Delly v. H.I.R.E. Inc.*,
   04 CV 1481 (JG), 2004 U.S. Dist. LEXIS 20446 (E.D.N.Y. 2004) ......................................12

*Eng v. City of N.Y.*,
   715 Fed. Appx. 49 (2d Cir. 2017) ...........................................................................................5

*Ercole v. Lahood*,
   No. 07-CV-2049 (JFB)(AKT), 2011 U.S. Dist. LEXIS 32753 (E.D.N.Y. Mar. 29, 2011) .....................................................................................................................................5

*Finn v. Anderson*,
   592 Fed. Appx. 16 (2d Cir. 2014) ...........................................................................................1

*Flywheel Sports, Inc. v. N.Y. State Dep't. of Taxation & Fin.*,
   155110/16, 2018 N.Y. Misc. LEXIS 2304 (N.Y. Sup. Ct. Jun. 14, 2018) .............................15

*Franchise Tax Bd. Of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*,
   463 U.S. 1 (1983) ..................................................................................................................12

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000) ......................................................................................................6

*Harris v. Hirsh*,
   86 N.Y.2d 207 (N.Y. 1995) ...................................................................................................14

*Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*,
   16 CV 1101, 2018 U.S. Dist. LEXIS 114679 (E.D.N.Y. July 6, 2018) ................................10

# TABLE OF AUTHORITIES
## (Cont'd)

Page(s)

*Haywood v. Woods*,
   9:01-CV-00225 (LEK/DEP), 2007 U.S. Dist. LEXIS 46005, at *5 (N.D.N.Y.
   Jun. 25, 2007)..................................................................................................................9

*Int'l Controls Corp. v. Vesco*,
   556 F.2d 665 (2d Cir. 1977).............................................................................................2

*Karim v. N.Y.C. Health and Hosps. Corp.*,
   17 Civ. 6888 (AT), 2020 U.S. Dist. LEXIS 98723 (S.D.N.Y. Jun. 4, 2020),
   *aff'd* 834 Fed. Appx. 651 (2d Cir. 2021) ........................................................................9

*King v. Marco Eugene Trucking Co.*,
   98 CV 5077 (SJ), 99 CV 7053 (SJ), 2002 U.S. Dist. LEXIS 26681 (E.D.N.Y.
   Feb. 21, 2002) ..................................................................................................................2

*Levitant v. City of N.Y. Human Res. Admin.*,
   No. 05-CV-230 (JFB), 2008 U.S. Dist. LEXIS 141119 (E.D.N.Y. Feb. 12,
   2008) ..............................................................................................................................11

*Morris v. Local 804, Int'l Bhd. of Teamsters*,
   167 F. App'x 230 (2d Cir. 2006) ...................................................................................12

*Morrissey v. Verizon Commc'ns Inc.*,
   No. 10 Civ. 6115 (PGG), 2011 WL 2671742 (S.D.N.Y. July 7, 2011)..................13

*Obi v. Amoa*,
   58 Misc. 3d 446 (Sup. Ct. Kings County, N.Y. 2017)............................................2

*Padiyar v. Albert Einstein Coll. of Medicine of Yeshiva Univ.*,
   73 A.D.3d 634 (1st Dep't 2010) ....................................................................................14

*Rodriguez v. It's Just Lunch Int'l*,
   07 Civ. 9227 (SHS)(KNF), 2009 U.S. Dist. LEXIS 12589 (S.D.N.Y. Feb. 17,
   2009) ................................................................................................................................2

*Ross v. New York*,
   15-CV-3286 (JPO), 2016 U.S. Dist. LEXIS 18517 (S.D.N.Y. Feb. 16, 2016) .......14

*Sadowski v. Technical Career Institutes, Inc.*,
   No. 97-7902, 1998 U.S. App. LEXIS 22594 (2d Cir. 1998) ..................................13

*Slattery v. Swiss Reinsurance Am. Corp.*,
   248 F.3d 87 (2d Cir. 2001)..............................................................................................6

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*Torre v. Columbia Univ.*,
   97 Civ. 0981 (LAP), 1998 U.S. Dist. LEXIS 10241 (S.D.N.Y. Jul. 8, 1998) ........................14

*Travers v. Corning Glass Works*,
   76 F.R.D. 431 (S.D.N.Y. 1977) ...........................................................................................11

**Statutes**

ADEA ...........................................................................................................................................2, 5

LMRA ......................................................................................................................................12, 13

NYCHRL ......................................................................................................................................2, 5

NYSHRL .......................................................................................................................................2, 5

Title VII ............................................................................................................................................2

**Other Authorities**

CPLR Article 78 ............................................................................................................................14

Federal Rule of Civil Procedure 8 ..................................................................................................1

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................2

Defendants submit this Reply Memorandum of Law in support of their Motion to Dismiss the Amended Complaint. Plaintiff's opposition (ECF Dkt. No. 29, hereinafter, "Pl. Opp.") largely reiterates her conclusory belief that she was treated unfairly by Defendants on account of her age and gender and retaliated against for her alleged complaints. However, nothing in the Amended Complaint or Plaintiff's opposition is sufficient to establish a plausible claim for relief against any of the Defendants. Additionally, Plaintiff's opposition incorrectly asserts that Defendants waived their right to move to dismiss her claims, and continues to assert claims that are either preempted, time-barred, premature, and/or improperly before this Court. As explained more fully below, Plaintiff's Amended Complaint should be dismissed in its entirety.

## ARGUMENT

### I.   STANDARD OF REVIEW

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) establish the parameters for determining whether a plaintiff has failed to state a claim. In response to the arguments in Defendants' pre-motion conference letter that the Amended Complaint should be dismissed because it fails to state a claim (ECF Dkt. No. 22), Plaintiff asserts only that she has met the pleading standards of Federal Rule of Civil Procedure 8. (Pl. Opp. pp. 1-2.) Plaintiff's opposition fails to refute that her Amended Complaint consists of only sweeping conclusions that cannot be plausibly supported by the "facts" pleaded, regardless of the standard applied. Moreover, as set forth in *Iqbal* and *Twombly*, the Court must only draw reasonable inferences from facts presented, and Plaintiff's claims must be "plausible," not just "possible." Plaintiff has not met this burden.  While Plaintiff is appearing *pro se*, she is also a practicing attorney and therefore, she should not be afforded leeway in the drafting of her pleadings. *Finn v. Anderson*, 592 Fed. Appx. 16, at *20 (2d Cir. 2014) ("While a court is ordinarily obligated to afford a special solicitude to *pro se* litigants in construing their pleadings, *pro se* attorneys typically

cannot claim that special consideration.") (citations and internal quotations omitted).[1]

## II.     DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO SEEK DISMISSAL

In her opposition brief, Plaintiff suggests that Defendants' motion to dismiss should be denied because Defendants waived their opportunity to move to dismiss because they answered an earlier version of the complaint. (Pl. Opp. pp. 9-10.) Plaintiff's assertion is incorrect because an amended complaint supersedes the original pleading. *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668-69 (2d Cir. 1977); *Boykin v. Nassau County Sheriff Dep't Family Court Unit*, 14-CV-5581 (JS)(ARL), 2015 U.S. Dist. LEXIS 26582, at *11 (E.D.N.Y. Mar. 3, 2015). Indeed, courts in this Circuit regularly consider cases where a party files a motion to dismiss an amended complaint after filing an answer to an original complaint. *See e.g. Rodriguez v. It's Just Lunch Int'l*, 07 Civ. 9227 (SHS)(KNF), 2009 U.S. Dist. LEXIS 12589, at *7 (S.D.N.Y. Feb. 17, 2009) (granting in part defendant's motion to dismiss amended complaint after defendant originally answered and analyzing claims under Fed. R. Civ. P. 12(b)(6)). Thus, Defendants have the same opportunities to respond to the Amended Complaint that they had with respect to Plaintiff's original complaint (*i.e.*, they can answer the amended complaint or file a motion to dismiss the amended complaint). Here, instead of answering the Amended Complaint, Defendants moved to dismiss.

## III.    PLAINTIFF'S CLAIMS ARE CONCLUSORY AND SHOULD BE DISMISSED

Plaintiff alleges that she was discriminated and retaliated against based on her age and gender in violation of Title VII, the ADEA, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). In support of her causes of action,

---

[1] Indeed, Plaintiff admits in her opposition that she is a licensed attorney who operates a law practice out of her home. (Pl. Opp. p. 17).  Plaintiff has also represented parties in litigation. *See Obi v. Amoa*, 58 Misc. 3d 446 (Sup. Ct. Kings County, N.Y. 2017) (representing the plaintiff, a college professor, in a tort action against six named defendants); *King v. Marco Eugene Trucking Co.*, 98 CV 5077 (SJ), 99 CV 7053 (SJ), 2002 U.S. Dist. LEXIS 26681 (E.D.N.Y. Feb. 21, 2002) (representing a defendant trucking company in a dispute over employee benefit fund contributions).

2

Plaintiff asserts 12 different categories of alleged facts in her Amended Complaint, however, none contain sufficient facts to state a claim upon which relief can be granted. In brief, each claim, which is grouped into the 12 categories below, is wholly conclusory, fails to include facts to make it plausible, and is speculative at best. Specifically:

- Category 1 - Plaintiff vaguely asserts the Defendants were selfishly motivated when raising Article 10 charges against Plaintiff when she raised her voice at two students, that they "inflated the complaint" against Plaintiff, that in Plaintiff's view her behavior was not "unprofessional or immoral," that raising Article 10 charges for raising her voice at students (which she admits was memorialized in a memo) was a form of gender discrimination, and that Dr. Moller's decision to reject Plaintiff's appeal of the Article 10 proceedings as premature was discriminatory because she did "nothing wrong." (Am. Comp. p. 10.) She further alleges that Dr. Moller was incentivized to "please the president" so he could be promoted to provost (Pl. Opp. p. 6), and that Mr. Hurwit and Dr. Clark "colluded" to bring the Article 10 charges against Plaintiff. (*Id.* at 7.)

- Category 2 - Plaintiff alleges that having low student evaluations is not a basis for Article 10 proceedings, that Plaintiff was not asked for her side of the story, and that Dr. Clark did not initiate Article 10 actions for poor student evaluations against younger professors. (Am. Comp. p. 10; Pl. Opp. p. 3.)

- Category 3 - Plaintiff alleges that only older professors were targeted by Dr. Clark for low student evaluations, including at least two male professors, while asserting this somehow (without any factual basis) evidences age and gender discrimination. (Am. Comp. p. 11.) She also asserts that there were "no objective metrics" for who would be targeted. *Id.* Plaintiff asserts that Dr. Clark favors the scholarly work of younger professors while simultaneously overlooking the scholarly work of older professors. (Pl. Opp. p. 5.) She claims that Dr. Clark "despises older faculty members and stops at nothing in his attempts to discredit them." (*Id.*)

- Category 4 – Plaintiff alleges that Dr. Clark reassigned a summer session course to a younger male, who she admits was qualified for the assignment, and that she should have been assigned the course due to her seniority. (Am. Comp. p. 11.) She alleges that Dr. Clark violated the CBA with the reassignment, that Dr. Clark failed to notify the Personnel and Budget Committee (the "Committee") about Plaintiff's request to teach the course, and that when the Committee, Plaintiff, and Dr. Clark met, nothing was accomplished because Dr. Clark "talked non-stop at the meetings and he refused to allow the [] Committee to vote." (*Id.*)

- Category 5 – Plaintiff alleges that Dr. Clark's removal of two graduate courses from Plaintiff's workload and reassignment to an unidentified male in his 60s was somehow done to discriminate against Plaintiff and other older professors. (Am. Comp. p. 12.) Plaintiff claims that when she spoke to Dr. Clark about the course removal, Dr. Clark would not specify the reasons why other than to say "issues have arisen." (*Id.*) She also alleges that Dr. Clark removed the courses without Committee approval. (*Id.*)

- Category 6 - Plaintiff alleges that the unidentified male professor who was reassigned Plaintiff's two graduate courses taught Plaintiff's courses in conjunction with younger, less

3

qualified professors, whom Plaintiff claims in a conclusory manner have replaced her. (Am. Comp. p. 12, EEOC Charge ECF Dkt. No. 21-1.)

- Category 7 - Plaintiff alleges without any supporting facts that Dr. Clark reassigned a course taught by Dr. Ralph Terregrossa to a younger adjunct, which she asserts evidences age discrimination. (Am. Comp. p. 12.) She also alleges, "upon information and belief," that the Committee did not approve this change and that "[b]ut for the fact that Dr. Terregrossa is an older professor, Dr. Clark would not have pulled the overload course" from him. (Am. Comp. p. 12; Pl. Opp. p. 3.)

- Category 8 – Plaintiff asserts that St. John's University's ("SJU" or the University") internal claims of race discrimination against Plaintiff are evidence of age and gender discrimination and retaliation for her April 2019 complaint (which she admits was determined to be unsubstantiated) against Dr. Clark. (Am. Comp. pp. 12-13, Pl. Opp. p. 5.) Plaintiff alleges that when she met with Ms. Haynes to discuss her complaint, she stated that "discrimination may be more systemic...going up the line to the President." (Am. Comp. p. 13.) Further, she alleges that Ms. Cadle's dismissal of her complaint, despite the unidentified evidence she provided to Ms. Cadle, was somehow discriminatory (Am. Comp. p. 13) and generally asserts that SJU has been "infected" with age and gender discrimination for years, which is why her complaint was found to be unsubstantiated. (Pl. Opp. p. 5.) She also asserts that the lodging of Article 10 claims by Dr. Sharpe against her (for the racially biased comments she does not deny making), and her subsequent suspension with pay by Dr. Gempesaw, were discriminatory and retaliatory because she "implicated" them in her complaint against Dr. Clark. (Am. Comp. p. 14.)

- Category 9 – Plaintiff conclusorily alleges that she is being discriminated against because she filed a complaint against SJU's EEO officer (Ms. Cadle) and because Ms. Cadle purportedly failed to follow the investigation procedures set forth in the CBA and SJU's own policies. (Am. Comp. p. 16.) She claims that several of the individual defendants are "simply covering up for their own ineptitude and discriminatory failure to sanction Ms. Cadle," that they are "complicit," and that Mr. Oliva, Mr. Hurwit and Ms. Llewellyn "have unethically closed ranks to cover-up what we know now from the Investigation Committee was a deeply flawed investigation." (*Id.*)

- Category 10 – Plaintiff alleges that the Article 10 charges and the proceedings against her (charges that she alleges were brought against her before she filed her lawsuit or her EEOC Charge, as evidenced by her reference to the Article 10 charges in her EEOC Charge) did not follow SJU protocol and Statutes and their procedural advance to a subsequent stage in the process, was retaliatory. (Am. Comp. p. 17.) Plaintiff asserts that Mr. Oliva is a "culpable defendant" and accuses him of "collaborating" with others she does not specifically identify. (*Id.* at 19.)

- Category 11 – Plaintiff claims that she is being punished for alleged racially biased statements she does not deny making during the Oral History Project but the younger, female professor (aged approximately 58) who released the transcript of what Plaintiff said is not being punished. (Am. Comp. p. 19.)

- Category 12 – Plaintiff claims that Dr. Clark's alleged reinterpretation of the course teaching policy was intentional to disproportionately negatively affect older professors. (Am. Comp. pp. 20-21.) She alleges that Dr. Clark re-interpreted certain CBA terms "to favor younger professors

4

at the expense of older professors to deny older professors the benefits to which they are entitled as a result of growing old and gaining seniority." (*Id.*) She also insinuates that Dr. Clark reinterpreted the CBA "to mean some convoluted rotation scheme which could squeeze older professors out of summer session courses." (*Id.* at 21.)

Plaintiff's claims are subject to dismissal because her allegations (within each of the 12 categories) are wholly conclusory and speculative, at best. Specifically, Plaintiff accuses Defendants of age and gender discrimination because Plaintiff perceives that she (and other individuals) have somehow been treated unfairly and that treatment must be on account of her/their age and her gender. This is insufficient to state Plaintiff's claims under Title VII, the ADEA, the NYSHRL, and the NYCHRL. *Eng v. City of N.Y.*, 715 Fed. Appx. 49, 52 (2d Cir. 2017) ("[Plaintiff's] only allegations are that she is a 58-year old woman who is paid less than a 57-year old man, a 54-year old man, and a 41-year old woman. That alone cannot plausibly support an inference that discriminatory animus is the reason for the disparities in pay she alleges; we 'cannot infer discrimination from thin air.'"). *Askin v. Dep't of Educ. of the City of N.Y.*, 110 A.D.3d 621, 622 (1st Dep't 2013) ("Although plaintiff asserts that defendants' actions were motivated by age-related bias, she does not make any concrete factual allegation in support of that claim, other than that she was 54 years old and was treated adversely under the state law or less well under the City HRL. Plaintiff's allegations in this respect amount to mere legal conclusions, and do not suffice to make out this element of her claim"). Thus, Plaintiff's Amended Complaint should be dismissed.

Plaintiff similarly fails to state a claim for retaliation because she fails to assert any facts to support her claims of retaliation, other than stating in a conclusory manner that the actions taken against her were because she had allegedly complained about discrimination. *Ercole v. Lahood*, No. 07-CV-2049 (JFB)(AKT), 2011 U.S. Dist. LEXIS 32753, at *32 (E.D.N.Y. Mar. 29, 2011) (dismissing plaintiff's claims for discrimination and retaliation and noting that plaintiff's claim that he was retaliated against for complaining to the EEOC was conclusory). Further undermining

5

Plaintiff's retaliation claim is that fact that she claims that Mr. Oliva retaliated against her in the Article 10 proceeding approximately one month after she filed her EEOC Charge, yet concedes that the Article 10 proceeding at issue began at least six months before she filed her EEOC Charge and well before any federal court lawsuit. (Pl. Opp. p. 12.) Therefore, she fails to show even temporal proximity, which even if she had, is not enough to support a retaliation claim. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Finally, in her opposition, Plaintiff impermissibly attempts to overcome the deficiencies of her Amended Complaint by adding additional conclusory allegations that fail to state a claim in any event. For example, Plaintiff's citation in her opposition to her belief that SJU "retains many vestiges of a traditional male-dominated patriarchal institution" (Pl. Opp. p. 5), and her suggestion that Dr. Moller had "every incentive to 'please' the President" (which were not included in her Amended Complaint), is impermissible and something this Court should not consider. *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("a district court errs when it 'considers affidavits and exhibits submitted by' [plaintiff], or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss"). Plaintiff cannot now incorporate additional details and facts in support of her claims that were not previously raised in her Amended Complaint. Regardless, even if this Court considers Plaintiff's impermissibly included new allegations in her opposition, Plaintiff's claims still fail because they do not state a claim.

### IV. THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

Initially, Plaintiff concedes that her federal claims against the individual defendants are improper. (Pl. Opp. p. 16). Therefore, the federal claims against them should be dismissed. All

of Plaintiff's claims against the individual defendants should also be dismissed because she fails to adequately plead how any of them are subject to liability for her claims. Instead, Plaintiff asserts in wholly conclusory fashion that each of the individual defendants discriminated against her or were otherwise part of a larger University-wide discriminatory campaign targeted against her and others.[2] For example, she generally asserts that the individual defendants enable Dr. Clark and that Dr. Clark's purported "discriminatory animus feeds into Plaintiff's allegations of age and gender discrimination by other administrators." (Pl. Opp. p. 5.) These allegations do not state a claim for age or gender discrimination. Similarly, as to each individual defendant Plaintiff generally asserts:

- Dr. Conrado "Bobby" Gempesaw – Plaintiff alleges, without any supporting facts, that Dr. Gempesaw supported Dr. Clark's alleged discriminatory policies and "encouraged the appointment of Dr. Clark...with the malevolent intent of harassing, embarrassing and intimidating older professors to retire voluntarily without the need to offer buyouts." (Am. Comp. pp. 9, 20.) Plaintiff also conclusorily asserts that Dr. Gempesaw's suspension of her with pay pending investigation was discriminatory and retaliatory. (*Id.* at 14-15.) Finally, Plaintiff conclusorily alleges that Dr. Gempesaw is discriminating against her because Plaintiff "implicated him" in the complaint she lodged against Dr. Clark. (*Id.* at 16.)

- Dr. Simon Moller – Plaintiff alleges without any factual support that Dr. Moller discriminated against her by not dismissing the Article 10.01 charge against her and by telling her that her appeal was premature. (Am. Comp. p. 10.) She also claims that Dr. Moller supports Dr. Clark's policies that have "created a hostile work environment for older professors" (*Id.* at 20) and that Dr. Moller was incentivized to "please" Dr. Gempesaw in the hope that he would be promoted to Provost. (Pl. Opp. p. 6.)

- Dr. Norean Sharpe – Plaintiff alleges that Dr. Sharpe and Dr. Clark "embarked on a plan to systemically harass, embarrass, and intimidate older professors into voluntarily retiring without the need for a buyout."[3] (Am. Comp. p. 9.) She also alleges without any support that Dr. Sharpe intended to "harass[], embarrass[] and intimidate[]" Plaintiff with the Article 10.01 proceeding because Plaintiff is "an older female professor" (*Id.* at 10) and because Plaintiff "implicated" Dr. Sharpe in her complaint against Dr. Clark. (*Id.* at 14.) Plaintiff also conclusorily alleges that Dr. Sharpe "harassed, embarrassed and intimidated Dr. Pappas because he was an older male." (Pl. Opp. p. 4.)

- Dr. Clark – Plaintiff generally alleges that "Dr. Clark embarked on a plan to systemically

---

[2] While the examples of conclusory allegations are far too numerous to list, the examples listed above are similar to the other allegations against the individual defendants, each of which are also conclusory and fail to state a claim.

[3] Plaintiff argues in her Amended Complaint and in her opposition that the recent "buyout" offered to professors was somehow discriminatory, while arguing that Dr. Sharpe and Dr. Clark's alleged actions in previously *not* providing a "buyout" was discriminatory. (*See e.g.* Am. Comp. p. 9, 14; Pl. Opp. pp. 4, 6, 9).

7

harass, embarrass, and intimidate older professors into voluntarily retiring without the need for a buyout." (Am. Comp. p. 9.) She also accuses Dr. Clark of initiating an Article 10.01 proceeding against her because of her age and gender and in retaliation for her complaint against him while not denying that she made the racist statements in an interview that formed the basis for the 10.01 proceeding. (*Id.* at 10, 13.) Further, Plaintiff alleges that Dr. Clark discriminatorily reassigned Plaintiff's class to a younger professor who she admits was qualified for the position, (*Id.* at 10) that Dr. Clark "nitpicks and looks for the Achilles' heels of older professors to discriminate," (Pl. Opp. p. 3) and that he and Mr. Hurwit "colluded" with each other "to bring Plaintiff up on the bogus Article 10.01 charge regarding Plaintiff's dispute with two students over the use of a Team Room." (*Id.* at 7.)

- Joseph Oliva – Plaintiff alleges that Mr. Oliva "hamstrung the Investigation Committee, when he...accepted assignment from the Board of Trustees to be the Committee's legal advisor," (Am. Comp. p. 15) was "complicit with the other administrators in their attempt to terminate [Plaintiff]," which according to Plaintiff evidences discrimination, (*Id.*) and that Mr. Oliva retaliated against Plaintiff when he removed "[Plaintiff's Article 10 case from the Investigation and Advice Stage (Step I) to the hearing and Deciding stage (Step II) without any formal written charge(s)" in accordance with SJU's Statutes because Plaintiff filed her federal court complaint and named him as an individual defendant. (*Id.* at 18.)

- Joshua Hurwit – Plaintiff alleges that Mr. Hurwit's characterization that Plaintiff raised her voice at students is somehow evidence of gender bias and the memo that he drafted that stated as much was discriminatory. (Am. Comp. p. 10.) She also states that Mr. Hurwit "harassed, embarrassed, and intimated [her] with the Article 10.01 proceeding" because she is an "older female professor." (Am. Comp. p. 10.) Finally, she alleges that Mr. Hurwit is engaged in a cover-up for a flawed investigation (*Id.* at 16), that he "colluded with Defendant Clark to bring Plaintiff up on the bogus Article 10.01 charge," and that he advised Ms. Cadle during her investigation of the transcript. (Pl. Opp. p. 7.)

- Michelle Cadle – Plaintiff alleges that Ms. Cadle conducted a "bogus investigation," which evidences "age and gender discrimination" and retaliated against Plaintiff because Plaintiff filed a discrimination complaint against Dr. Clark and implicated senior administrators, "whom Ms. Cadle may have been directed to protect." (Am. Comp. p. 14.) Plaintiff also alleges that Ms. Cadle failed "to follow statutory and contractual procedures established in the CBA and the University's own policies." (*Id.* at 16.)

- Keaton Wong – Plaintiff alleges only that Ms. Wong received a copy of the transcript of the oral history project interview in which Plaintiff allegedly made racially biased statements from Dr. Clark (Am. Comp. p. 13) and that she referred Plaintiff's age and gender complaint to Defendant Haynes. (Pl. Opp. p. 6.)

- Nada Llewellyn - Plaintiff's assertions against Ms. Llewellyn are that she denied Plaintiff's alleged gender and age complaint on "non-responsive grounds," that she participated in a cover-up based on an alleged flawed investigation by Ms. Cadle and that she is now covering up for others. (Am. Comp. p. 16.)

- Danielle Haynes – Plaintiff alleges that the fact that Ms. Haynes did not find evidence of discrimination during her investigation after Plaintiff complained demonstrates gender and age discrimination. (Am. Comp. pp. 12-13). Plaintiff also allegedly told Ms. Haynes that there may

8

be systemic discrimination at SJU. (Pl. Opp. p. 7.)

Plaintiff's wholly conclusory allegations against the individual defendants are insufficient to state claims against them. Plaintiff cannot and does not point to anything other than her own beliefs and speculation that she was discriminated against by them or that they were somehow in cahoots with each other to either protect one another or to selfishly be promoted. *Karim v. N.Y.C. Health and Hosps. Corp.*, 17 Civ. 6888 (AT)(OTW), 2020 U.S. Dist. LEXIS 98723, at *19 (S.D.N.Y. Jun. 4, 2020) ("Though pretextual rationales may, with other alleged facts, establish a prima facie case of discrimination, the mere allegation of mendacity or pretext, without more, is insufficient to state a claim.") (citations omitted), *aff'd* 834 Fed. Appx. 651 (2d Cir. 2021). Accordingly, the claims against the individual defendants should be dismissed.

## V. PLAINTIFF'S CLAIMS DO NOT RELATE BACK TO HER EEOC CHARGE

In her opposition, Plaintiff alleges that all of her claims relate back to her EEOC Charge. (Pl. Opp. pp. 10-11.) Plaintiff is incorrect as her EEOC Charge fails to identify numerous facts in support of her claims that she now improperly asserts in her Amended Complaint.[4] In her Charge, Plaintiff vaguely asserts that she has been subjected to discrimination and retaliation because she complained about not being scheduled for an assigned course and that she was disciplined (by way of suspension) with purported "fabricated and baseless claims of racial discrimination" after she lodged a complaint. (Plaintiff's EEOC Charge, dated September 12, 2019, is attached to her Amended Complaint, ECF Dkt. No. 21-1.) Her EEOC Charge also conclusorily alleges that since her suspension four younger professors have replaced her and that six older professors "are being

---

[4] Plaintiff's failure to exhaust her administrative remedies was also raised as an affirmative defense in Defendants' answer to Plaintiff's prior complaint. *See* Answer, Affirmative Defense No. 6. (ECF Dkt. No. 12.) *See e.g. Haywood v. Woods*, 9:01-CV-00225 (LEK/DEP), 2007 U.S. Dist. LEXIS 46005, at *5 (N.D.N.Y. Jun. 25, 2007) (defendants "did not waive the affirmative defense of failure to exhaust administrative remedies" when they included the affirmative defense in their answer.)

9

targeted for removal with fabricated claims of student complaints, excessive scrutiny of performance disparate assignments and false misconduct allegations." (ECF Dkt. No. 21-1.)

Plaintiff's EEOC Charge nowhere references the following discrete claims alleged in her Amended Complaint, which she alleges pre-dated her EEOC Charge: (1) the Article 10 proceeding initiated against Plaintiff because she raised her voice at two students; (2) the Article 10 proceeding against her for low student evaluations; (3) removal of her fall 2019 graduate courses from her schedule; and (4) Plaintiff's assertions that her internal complaint was improperly investigated.

Plaintiff also alleges a number of discrete acts in her Amended Complaint, which took place after the EEOC had already issued the no probable cause determination and right to sue on February 28, 2020 (ECF Dkt. No. 21-1), including Plaintiff's allegations that: (1) she is being retaliated against for bringing the instant lawsuit, which was originally filed on May 26, 2020; (2) Dr. Ralph Terregrossa's overload course was reassigned to younger professors; and (3) the current Article 10 proceedings against her are not following proper procedures and that this is somehow discriminatory and retaliatory. (Am. Compl. pp. 15-16.) Nor does Plaintiff's Charge identify any of the alleged six other professors who she believes are being targeted. Plaintiff failed to incorporate enough facts into her Charge to put Defendants on notice of these additional claims that both pre and post-date her Charge (and those that pre-date her Charge are also barred by the failure to assert them within 300 days of occurrence) and therefore, the allegations set forth in the Amended Complaint do not relate back to Plaintiff's Charge. *See Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, 16 CV 1101 (RRM)(CLP), 2018 U.S. Dist. LEXIS 114679, at *25-28 (E.D.N.Y. July 6, 2018) (determining that plaintiff failed to exhaust her administrative remedies when she asserted a hostile work environment claim which "bears little relation to the discrete, episodic instances of discrimination alleged in the Charge, such that it 'would not naturally be addressed in the course of an [agency] investigation into

10

such allegations.'"); *see e.g. also Levitant v. City of N.Y. Human Res. Admin.*, No. 05-CV-230 (JFB), 2008 U.S. Dist. LEXIS 141119, at *9 (E.D.N.Y. Feb. 12, 2008) ("In assessing whether claims are reasonably related, it is not the label of the charge that matters, but rather the focus of the court should be 'the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.").

Plaintiff also does not identify the individual defendants in her Charge, except Dr. Gempesaw, who she references as suspending her with pay pending SJU's investigation of her misconduct. Therefore, the claims against the individual defendants should be dismissed, because Plaintiff's Charge failed to put them and the EEOC on notice of the charges being made against them. *See Travers v. Corning Glass Works*, 76 F.R.D. 431, 433 (S.D.N.Y. 1977) (dismissing claims against unnamed individual defendants and plaintiff's supervisor who were not named in EEOC charge and noting that plaintiff's supervisor was "not named as a respondent, and, as it is uncontested that the conciliation machinery never was invoked as to him insofar as it was charged that he allegedly violated plaintiff's rights, he was never notified of any claim against him").

Finally, Plaintiff did not check the box for retaliation on her EEOC Charge, although she now asserts that she is being retaliated against in a number of ways that she did not assert in her Charge. For example, she now alleges that: (1) she is being retaliated against for filing a claim against the EEO specialist (Ms. Cadle) (Am. Comp. p. 16.) (2) Dr. Sharpe retaliated against Plaintiff because she "implicated" him in the complaint against Dr. Clark (Am. Comp. p. 14); (3) Mr. Oliva and the other administrators became "complicit...in their attempt to terminate" Plaintiff which was discriminatory (Am. Comp. p. 15); and (4) Mr. Oliva's removal of the Article 10 procedure from the "Investigation and Advice stage (Step I) to the Hearing and Deciding stage (Step II) without any formal written charge(s)" was retaliatory because she filed her federal court

11

complaint. (Am. Comp. p. 18.) For the same reasons explained above, Plaintiff's new retaliation claims do not relate back to her EEOC Charge and therefore, are subject to dismissal. *Delly v. H.I.R.E. Inc.*, 04 CV 1481 (JG), 2004 U.S. Dist. LEXIS 20446, at *16 (E.D.N.Y. 2004) (dismissing retaliation claim and noting that plaintiff "failed to assert claims of retaliation in his EEOC charge" and thus, "those claims are not reasonably related to the other claims alleged therein.").

## VI. PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE LMRA

Although Plaintiff styles her Amended Complaint as a discrimination complaint, her state and city law claims are actually claims for breach of contract, as they rely on rights she alleges arise out of and/or require interpretation of the Collective Bargaining Agreement ("CBA") and/or SJU Statutes that she asserts are incorporated into the CBA by reference.[5] Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA") preempts "any state cause of action for violation of contracts between an employer and a labor organization," *Franchise Tax Bd. Of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23 (1983) (citation omitted), and "any state law claim that substantially depends upon analysis of [a labor] agreement." *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 231 (2d Cir. 2006) (citing *Franchise Tax Bd.*, 463 U.S. at 23). Here, Plaintiff's claims of age and gender discrimination explicitly and repeatedly invoke and substantially depend upon either analysis of the CBA or SJU's Statutes. As set forth in Defendants' pre-motion conference letter, Plaintiff explicitly invokes the CBA when, for example, she alleges that Ms. Cadle failed "to follow statutory and contractual procedures established in the CBA and SJU's own policies." (Am. Comp.

---

[5] Defendants did not attach any documents to their March 31, 2021 request for a pre-motion conference and do not attach any documents to this Reply, but instead have relied only on Plaintiff's own references to the CBA and SJU's Statutes in her Amended Complaint. Also, Plaintiff's Amended Complaint included a copy of her EEOC Charge and Dismissal and Notice of Rights (ECF Dkt. No. 21-1) and Plaintiff's opposition included certain portions of the CBA and SJU's Statutes, which she alleges were violated by SJU. (ECF Dkt. Nos. 29-1-3.) Plaintiff does not dispute that the Court may consider and take judicial notice of these publicly available documents, which are referred to and intrinsic to Plaintiff's claims, without converting Defendants' motion to dismiss into a motion for summary judgment.

12

p. 16.) She also alleges that Dr. Clark reassigned classes away from Plaintiff and "reinterpret[ed]" the CBA in a way that discriminated against Plaintiff and disparately impacted older professors and rendered Section 9.11(3) and the seniority provisions of the CBA "meaningless." (Am. Comp. pp. 10, 21-22; Pl. Opp. p. 14.) Plaintiff's claims are thus preempted because a Court would need to substantially review and analyze the terms of the CBA and SJU Statutes to address them. *Morrissey v. Verizon Commc'ns Inc.*, No. 10 Civ. 6115 (PGG), 2011 WL 2671742, at *4 (S.D.N.Y. July 7, 2011) ("Courts generally hold that where a state-law discrimination claim turns on application of a collective bargaining agreement's seniority provisions, the claim is preempted by Section 301 of the LMRA."); *Sadowski v. Technical Career Institutes, Inc.*, No. 97-7902, 1998 U.S. App. LEXIS 22594, at *2 (2d Cir. 1998) ("Claims asserting a breach of a [CBA] are completely preempted by Section 301") (citation and internal quotation marks omitted).

With respect to SJU's Statutes, Plaintiff alleges that the various Article 10 charges brought against her failed to follow proper procedures and are discriminatory and retaliatory as a result. Plaintiff's own allegations demonstrate that interpretation of the CBA and/or SJU's Statutes is necessary for determining her claims. For example, Plaintiff claims that the Article 10.01 proceeding against her for low student evaluations is not a basis for an Article 10.01 proceeding. (Am. Comp. pp. 10-11; Pl. Opp. p. 3.) Similarly, Plaintiff alleges that SJU failed to follow its Statutes with the Article 10 proceeding against Plaintiff related to the race discrimination claim raised against her. (*See* Am. Comp. p. 14, "[p]ursuant to the University Statutes, the President should have met with me to attempt a resolution."). Assessing whether an Article 10 proceeding is appropriate would require this Court to analyze and review the terms of the SJU's Statutes in rendering any decision. While Plaintiff may have styled her state and city law claims as discrimination claims rather than breach of contract claims, these claims still require interpretation

13

and analysis of the CBA and/or SJU's Statutes and therefore, are preempted. *Ross v. New York*, 15-CV-3286 (JPO), 2016 U.S. Dist. LEXIS 18517, at *27-28 (S.D.N.Y. Feb. 16, 2016) ("[Plaintiff] alleges that CUNY violated the terms of his CBA by pursuing disciplinary charges against him. His contract claim is thus 'completely preempted.'"); *Harris v. Hirsh*, 86 N.Y.2d 207, 211 (N.Y. 1995) (a state law cause of action is preempted "if it depends upon an interpretation of the CBA for its resolution"). As such, Plaintiff's claims are preempted and dismissal is appropriate.

## VII. PLAINTIFF'S CLAIMS ARE COVERED BY ARTICLE 78

To the extent Plaintiff seeks to challenge decisions based on alleged violations of SJU's procedures under the CBA and SJU's Statutes (*see, e.g.* Am. Comp. pp. 10-11, 13-16, Pl. Opp. pp. 3, 5-6, 14), such challenges can only be brought pursuant to a CPLR Article 78 proceeding, which is subject to a four month statute of limitations. *See Padiyar v. Albert Einstein Coll. of Medicine of Yeshiva Univ.*, 73 A.D.3d 634 (1st Dep't 2010) ("The instant plenary complaint, while couched in terms of unlawful discrimination and breach of contract, is in fact a challenge to a university's academic and administrative decisions and thus is barred by the four-month statute of limitations for a CPLR Article 78 proceeding, the appropriate vehicle for such a challenge."); *Torre v. Columbia Univ.*, 97 Civ. 0981 (LAP), 1998 U.S. Dist. LEXIS 10241, at *48 (S.D.N.Y. Jul. 8, 1998) ("Here, the decision denying Plaintiff tenure became final and binding when the [Faculty Affairs Committee] informed Plaintiff, on June 5, 1996, that it was closing its investigation. [Plaintiff] filed this action on or about February 14, 1997, well after the four-month statute of limitations had expired. Accordingly, this claim is dismissed as untimely.")

In her opposition, Plaintiff claims that an Article 78 proceeding is inappropriate because no "final determinations" have been made. (Pl. Opp. p. 14.) Plaintiff asserts that the following hearings and charges against her remain open: (1) the Article 10.01 action against Plaintiff for yelling at two students (from December 2018); (2) the Article 10.01 action against Plaintiff for

14

low student evaluations (from April 2019); (3) the investigation conducted by Ms. Cadle which found Plaintiff's discrimination claims to be unsubstantiated (from July 2019) and (4) the Article 10.01 proceeding against Plaintiff for her use of racially charged language. (Pl. Opp. p. 15.)[6]

Plaintiff's argument that the claims are not subject to dismissal because they have not resulted in final decisions does not make this Court the appropriate forum for her claims either. To the extent any decisions remain non-final, those claims are subject to dismissal here as they are premature and those claims will be subject to Article 78 proceedings (or to grievance procedures in the interim) for review once they do become final. *See e.g. Flywheel Sports, Inc. v. N.Y. State Dep't. of Taxation & Fin.*, 155110/16, 2018 N.Y. Misc. LEXIS 2304, at *4 (N.Y. Sup. Ct. Jun. 14, 2018) (dismissing complaint and noting that an Article 78 proceeding was appropriate proceeding).

## CONCLUSION

For each and all of the foregoing reasons, Defendants' motion should be granted and Plaintiff's claims against Defendants should be dismissed in their entirety.

Date: April 28, 2021  
New York, New York

/s/ *Barbara A. Gross*  
Barbara A. Gross  
Maayan Deker  
LITTLER MENDELSON, P.C.  
900 Third Avenue  
New York, NY 10022.3298  
212.583.9600

*Attorneys for Defendants*

---

[6] Although any well pleaded allegations by Plaintiff in the Amended Complaint are assumed to be true for purposes of determining Defendants' Motion to Dismiss, noticeably absent from this list of final determinations are her allegations that a younger male was allowed to teach summer classes that she says she should have been assigned under the CBA. This is likely because of the arbitration decision previously issued against Plaintiff on these same allegations, which Defendants reserve the right to assert in any future proceedings.